**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

ALBERT EVANS                                                                                    PLAINTIFF
ADC #137248

v.                                          4:20-cv-00405-KGB-JJV

MELANIE JONES, Dr.,
Wrightsville Unit, ADC; *et al.*                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should be specific and include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

### DISPOSITION

## I.    INTRODUCTION

Albert Evans ("Plaintiff") was a prisoner in the Arkansas Division of Correction ("ADC") when he filed this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights by failing to provide him with adequate medical care for injuries to his left elbow.   (Doc. 2.)   Plaintiff's only remaining claim, which was properly exhausted in grievance WR-19-108, is that Defendant Dr. Melanie Jones did not give him a work restriction to accommodate that injury when she reviewed his medical records on February 28, 2019.   (Doc.

1

71.)    All other claims and Defendants have been dismissed without prejudice.    (*Id.*)

Defendant Jones has filed a Motion for Summary Judgment arguing she is entitled to judgment as a matter of law.    (Docs. 72, 73, 74.)    Plaintiff has not filed a Response, and the time to do so has expired.    After careful consideration and for the following reasons, I recommend the Motion be GRANTED, Plaintiff's February 28, 2019 claim against Dr. Jones be DISMISSED without prejudice, and this case be closed.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.    Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).    When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.    *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).    The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.    *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).    The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.    *Id.* (citations omitted).    A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.    *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).    Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.    *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

III.    FACTS

In the Complaint, Plaintiff says that on December 14, 2017, he fractured and dislocated his left elbow while he was riding a horse at the Wrightsville Unit.[1]    (Doc. 2.)    A private orthopedic surgeon allegedly operated on Plaintiff's elbow on December 31, 2017; March 12, 2018; and August 24, 2018.    (*Id.*) And, he was transferred to the ADC medical unit in Malvern, Arkansas. (*Id.*)    On November 2, 2018, the private surgeon allegedly decided to conservatively manage Plaintiff's injury and recommended a follow-up visit in approximately two months.    (*Id.*)

The remaining facts, taken from Plaintiff's deposition testimony and medical records, are as follows.    On February 20, 2019, Plaintiff was transferred to the Wrightsville Unit.    (Doc. 74-1 at 2; Doc. 74-2.)    On February 27, 2019, he was assigned to kitchen duty.    (Doc. 61-5 at 38.) During his deposition, Plaintiff said his initial kitchen duties included lifting pans that weighed approximately twenty pounds.    (Doc. 74-3 at 2-6.)    But after he complained that doing so hurt his elbow, kitchen supervisors told Plaintiff to sweep the floors and wipe down the tables.    (*Id.*)

On February 28, 2019, Dr. Jones reviewed Plaintiff's medical records to see if he should be seen by a specialist.    (Doc. 74-1 at 3.)    She noted:

> Inmate was treated with external fixation and placement of a radial head prosthesis of a complicated fx radius with dislocation and full ligament rupture by UAMS Ortho late last year. Inmate had elbow release for stiffness and decreased ROM in elbow 8/24/18.    He completed PT, still c/o pain; says affects almost everything he does – cannot exercise, work difficult.    NSAID not effective for pain.    Ortho recommended an additional f/up if symptoms continued (actually recommended around late January. He transferred here last week and has already placed several requests).

(Doc. 74-1 at 3.)    Dr. Jones then ordered a follow-up appointment with Plaintiff's orthopedic surgeon.    (*Id.*)    She did not examine Plaintiff or impose any work restrictions.    (*Id.* )

---

[1]  The record does not contain any of Plaintiff's medical records prior to February 28, 2019.    (Doc. 74-1.)

On March 1, 2019, Plaintiff filed WR-19-108 saying his kitchen duties were causing his arm to swell and his hand to become numb.    (Doc. 61-5 at 38.)    Plaintiff claimed he was "in risk of reinjuring myself by performing any kind of force or pressure to my arm."    (*Id.*)    He also said: "I have put in 3 sick calls since I have been back to this unit, I am m-1, and have no restrictions or even seen a doctor to see if I need them."[2]    (*Id.*)    The next day, he filed a sick call request seeking a medical restriction for his arm.    (Doc. 74-1 at 5.)

On March 3, 2019, a non-party nurse examined Plaintiff, gave him a medical restriction for one-arm duty until March 24, 2019, and told him there was an orthopedic appointment pending. (*Id*. at 5-6)    And, on March 25, 2019, another non-party nurse continued Plaintiff's medical restriction for one-arm duty until April 1, 2019.    (*Id*. at 7,8.)    On March 29, 2019, Plaintiff was seen by the private orthopedic doctor, but the record does not contain the result of that examination or the specialist's recommendations.    (Doc. 61-5 at 35.)

On April 1, 2019, the Health Services Administrator found grievance WR-19-108 "is with merit and resolving" because Plaintiff received a work restriction, he was seen by the orthopedic specialist, and the prison "MD" was reviewing the specialist's recommendations.    (Doc. 61-5 at 36.) The Assistant ADC Director denied Plaintiff's appeal of that ruling. (*Id*.)

## IV.    DISCUSSION

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care."  *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).    To proceed to trial on his Eighth Amendment inadequate medical care claim, Plaintiff must have evidence that:    (1) he had

---

[2] Although Plaintiff said he had filed three sick call requests, the ADC's medical records show he filed only one, about an unknown matter, before Dr. Jones reviewed his medical records on February 28, 2019.   (Doc. 74-1 at 2.)    A non-party nurse responded to that sick call request. (*Id*.) And, there is no evidence Plaintiff was referred to Dr. Jones for an examination or consultation at that time.    (*Id*.)

4

an objectively serious medical need on February 28, 2019; and (2) Dr. Jones subjectively knew of, but deliberately disregarded, that serious medical need. *See Hum. Rts. Def. Ctr. v. Baxter Cty. Arkansas,* 999 F.3d 1160 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). As to the second requirement, deliberate indifference is a high threshold that goes well beyond negligence or gross negligence. *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). It "requires proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

The purpose of Dr. Jones's February 28, 2019 review of Plaintiff's medical records was to determine whether an orthopedic consult was necessary. And, it is undisputed that she ordered that consultation. There is no evidence Plaintiff had been referred, at that time, to Dr. Jones to determine whether he should receive work restrictions. (Doc. 74-1 at 1-3; Doc. 74-2; Doc. 74-3 at 6-7.) And, an APRN says in her sworn declaration that, in her professional medical opinion, Dr. Jones acted appropriately and without any medical negligence or deliberate indifference when she reviewed Plaintiff's medical records on February 28, 2019. (*Id.*) "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019). Plaintiff has not presented any evidence suggesting Dr. Jones was deliberately indifferent to his objectively serious medical needs on February 28, 2019.

Additionally, the parties agree Plaintiff received a work restriction limiting him to one-arm duty on March 3, 2019, which was <u>four days</u> after he began working in the kitchen on February

27, 2019.[3]   (Doc. 74-1 at 6, 8; Doc. 74-3 at 7-8.)   To avoid summary judgment, an inmate alleging a delay in medical treatment that rises to the level of a constitutional deprivation "must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment."   *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016); *see also Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006).   In other words, an inmate must show that a defendant ignored a critical or escalating medical situation, or that the delay adversely affected the inmate's prognosis.   *Id*.   Nothing in the record suggests Plaintiff's elbow injury was adversely affected by the four-day delay in receiving a one-arm duty medical restriction.   Thus, I conclude Dr. Jones is entitled to summary judgment, and I recommend Plaintiff's February 28, 2019 inadequate medical care claim against her be dismissed with prejudice.

## V.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.   Defendant Jones's Motion for Summary Judgment (Doc. 72) be GRANTED, Plaintiff's February 28, 2019 medical care claim against her be DISMISSED with prejudice, and this case be CLOSED.

2.   The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 17th day of November 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[3]   During his deposition, Plaintiff was unclear about whether he had one or more days off during that four-day period.   (Doc. 74-3 at 4-6.)   For purposes of summary judgment, I will construe this ambiguity in Plaintiff's favor and presume he worked all four days.